UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
September 22, 2016
David J. Bradley, Clerk

| | |
|---|---|
| Robert French, § | |
| § | |
| Plaintiff, § | |
| § | |
| versus § | Civil Action H-14-2146 |
| § | |
| Gray Television Group, Inc., § | |
| § | |
| Defendant. § | |

# Opinion on Judgment

1. *Introduction.*

    A television station fired its meteorologist. He says the station breached their agreement, retaliated for his having taken medical leave, and discriminated against him for his disability. The station prevails.

2. *Background.*

    Gray Television Group hired Robert French as its chief meteorologist and on-air reporter in 1990. In 2013, Gray fired him half-way through the three-year term of his employment agreement with cause specified in the text.

    From 1990 to 2012, Gray had occasionally disciplined and counseled French to control his anger, treat colleagues respectfully, work all scheduled hours, tell his supervisors in advance of his vacations, and ensure the presence of qualified staff during severe weather.

    On August 9, 2012, French took an unauthorized two-hour break during an alert for severe weather, abandoning the work to a lower-level meteorologist. On January 8, 2013, French lost his temper and cursed at a colleague about another worker's schedule. Three days later, French's supervisor, Mike Wright, sent French an email detailing problems about French's requests for vacation, treatment of colleagues, and staff scheduling. Wright also asked to meet on

January 14; he says that he was going to give French a plan for improvement. French responded by saying he did not see a problem with his scheduling decisions and that he would not be coming in that day. This response was apparently illustrative of his attitude at work.

On January 15, 2013, French's wife called to say that he was in the hospital. She also sent a note from French's doctor saying that he needed to take medical leave for an illness that began on January 10. French told Gray that he would take the leave, agreeing that it began on January 10. French was on leave from January 10 to April 16. When he returned to work, management agreed that he could have fewer responsibilities until he was fully able to resume the duties of chief meteorologist. Although some of his duties were assigned to another worker who was called the interim-chief meteorologist, Gray treated French as having resumed his position as chief meteorologist, paying him as it had before his leave.

On April 24 – one week after his return – Wright told French about the plan for improving his functioning. French's work remained substandard with these new infractions:

- In May, French left the station – from 11:00 p.m. to 12:30 a.m. – despite a severe-weather alert.
- In late June or early July, a meteorologist complained that French had a "meltdown" in front of other workers with him yelling and cursing.
- In July, French did not post information about weather changes on the station's social-media sites.

On July 5, Gray fired French, citing his low productivity, disruptive behavior, erratic attendance, and failure to improve.

3.   *Cause.*

Their agreement permits Gray to fire French if: (a) he wilfully neglected his duties, (b) he refused to comply with instructions without excuse, or (c) Gray notified him in writing and paid him two-months salary from the date of firing.

Gray had cause to fire French. Gray shows that from 1990-2012 it warned French repeatedly. The problems in the plan were endemic.

The plan that Wright gave French on April 24, 2013, specified that he was to:

- Control his anger and behave professionally;
- Request vacation in advance by talking to a supervisor;
- Be present at work for his scheduled time;
- Use the weather department's tools;
- Train less-experienced employees; and
- Schedule personnel appropriately.

These instructions were reasonable, but French did not change. He continued his pattern of wilfully doing what he chose. French says that the reasons given were a pretext to fire him (a) in retaliation for taking protected medical leave and (b) as discrimination for having a disability.

A. *Absence.*

He says the complaint about his absence during sever weather is pretext because weather reports show that there was no severe weather in the area on that date. He misstates reality. The reports show thunderstorms with gusts of wind up to twenty-eight miles per hour. French may not consider that severe. Even if he does not, the record of the *forecasts* predicted severe weather – not that it actually happened. French left the station without knowing what was going to happen.

French does not deny that he continued to arrived late.

B. *Lost Temper.*

French says that the complaint that he yelled and cursed is pretext because cursing was common. This is the "But Bobby did it too" defense. French overlooks that he was disciplined for his behavior. Misbehavior of others is no defense. Also, his cursing is one of many misdeeds, compounding the severity of each. One of the workers whom Gray says witnessed the episode does not remember it and was not offended. One co-worker may not have been offended, but other staff may have been. Regardless of the sensitivities of the staff, the

station sets the standards for workplace civility, and it was offended.

The worker who did complain testified that she remembers French yelling and cursing at her.

### C. Social Media.

Finally, French says that the improvement plan did not require him to post about severe weather on social media. Gray was not required to specify each part of French's job. After all, he had been there for a dozen years and was a leader. The plan had emphasized that he was to use the weather department's tools. Social media pages are a major component of news outlets.

French does not deny that posting was one of his duties nor that he did not make the expected posts on time. He says another worker also did not make a post. Yes, and she did not hold a position parallel to his; she is not comparable. She was reprimanded but was not fired because she also did not have French's history of poor performance.

### D. Severance.

Gray offered to pay French for two months after the date he was fired. Even if it did not tender the severance fee, it had cause. Whether they are applied to his contractual or statutory claims, his arguments are disingenuous quibbles. No fully informed, disinterested person could reasonably conclude that French's behavior was not clearly actionable by the company.

### 4. Retaliation.

French says that Gray retaliated against him for taking leave protected by the Family and Medical Leave Act. French says that he was disciplined, discriminated against, and fired for taking leave. Gray did not discriminate against him or fire him because he took protected leave. As the section about the contract reveals, the station had long experience with French's persistent multifaceted substandard execution of his duties. His tacking a different legal label on the single consequence of his history at Gray does not alter a single underlying fact or event.

Gray allowed French to take protected leave from January 10, 2013, to April 16, 2013. When he returned, he resumed his title and pay. He was also

allowed a grace period before he resumed his full responsibilities.

A week after he returned, Wright gave French a plan for improving his performance. The plan was neither discrimination nor termination. French calls the plan "discipline," but it does nothing other than remind him of some of his duties and inform him that his past performance has been unsatisfactory. It neither demoted him nor decreased his pay.

French also says that he had to work on Memorial Day, while another worker took a vacation. The other worker was a meteorologist, not the chief meteorologist; she is not an appropriate comparator. Further, French was already scheduled to work Memorial Day, as were other employees. The denial of a request to change the schedule, five days beforehand, does not evince discrimination.

Gray's decision to fire French was not causally connected to his taking protected leave. French was entitled to twelve-weeks of protected leave; Gray gave him more time, telling him to come back when he was well. When he came back, Gray told him he had performed poorly before taking leave and gave him precise steps for improvement. Almost three months after his return, he was fired for not improving.

French protests many times that the improvement plan refers to his misbehavior while he was on protected leave. Other than his initial absence itself, the faults in performance were while he was at the station. The company was told that he had gone to a hospital on January 14; French asked to backdate the leave to January 10, and Gray agreed. He had been told about a plan to be explained on January 14. The next day he went to the hospital. In hard fact, his absence started on January 14. The plan said the complained of behavior happened between January 8, 2013, and January 14, 2013.

Gray says that before his leave started on January 10, 2013, he yelled and cursed during stressful times, came to work late, left at inappropriate times, inadequately managed the schedule, and belatedly told his supervisors about his planned vacations. The plan probably says "January 8-14, 2013," because the most recent of those behaviors – yelling and cursing at a colleague – was on January 8, 2013. The plan was written January 14, 2013.

French also says that an electronic message from the interim-Chief Meteorologist evinces Gray's discriminatory intent. The message shows that one

worker thought French should not take vacation so soon after having missed three months of work. That person was not involved in the decision to fire French. The workers who had been covering for French for months did legitimately not want to cover for him after he had been back for awhile. What one or ten workers think is not discrimination. French would have it that talk about current schedules is banned because it would reflect on his absence.

Gray gives nondiscriminatory genuine reasons for firing French. Not a pretext in the bunch.

5.  *Disability.*

French says that Gray fired him because he was disabled. French never asked for an accommodation at Gray nor has he asked for one at his new employer, another station.

French is not disabled. He says that he has general anxiety disorder and major depressive disorder, causing a "breakdown" that started on January 10, 2013. By April 16, his doctor released him to return to work. Between January and April, he was not disabled; he was sick. Upon returning to work, French did not seek an accommodation. His doctor reported him fit for duty medically. Being sick does not justify a worker attacking his coworkers, refusing to meet managers, skipping responsibilities; it does justify seeking medical attention and, when supported by medical analysis, leave.

Gray fired French in July, three months after his recovery; he no longer had an argument for being disabled. While a temporary impairment may qualify as a disability, the disability does not endure once the impairment abates. French says that Gray developed a plan for his improvement while he was disabled; it had ample reasons for proposing that he needed to change well before he fell ill. Being sick or disabled does not absolve the worker for full responsibility for his behavior before the leave. An improvement plan is not an adverse employment action.

Even if French was disabled, he was not fired because of his disability. At his deposition, his criticism of his bosses was that they did not "understand" his medical problem. He will take nothing on his claim for disability discrimination.

6. *Conclusion.*

French was ill in the first quarter of 2013. The law protects workers who are ill with required unpaid leave. If workers can meet their job's responsibilities with a reasonable adjustment in their working conditions that they formally request, they are protected from adverse actions because of their disabling condition. Neither law immunizes workers from the consequences of their behavior at work. With an accommodation, they must do the job right. Gray Television Group fired Robert French because he failed to do his job and disrupted his colleagues. He will take nothing.

Signed on September 22, 2016, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge